**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| RODNEY W. HARRELL,<br>981 Powhatan St.<br>Alexandria, VA 22314,<br><br>Individually and on behalf of all<br>others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FREEDOM MORTGAGE<br>CORPORATION,<br>A New Jersey Corporation,<br>907 Pleasant Valley Ave.<br>STE 3<br>Mt. Laurel, NJ 08054<br><br><br>Defendant. | <br><br><br><br><br><br>Civil Action No. _____<br><br><br>DEMAND FOR JURY TRIAL |

## COMPLAINT

COMES NOW Plaintiff, Rodney W. Harrell, and files this Complaint against Defendant Freedom Mortgage Corporation and in support thereof states as follows:

## JURSIDICTION AND VENUE

1. The United States District Court for the Eastern District of Virginia has jurisdiction of the federal claims herein under 28 U.S.C. § 1331 and 12 U.S.C. § 2614. This court has jurisdiction of the pendent state claims under 28 U.S.C. § 1367(a).

2. Venue is proper in this District under 28 U.S.C. § 1391(b)(1), and (c).

## THE PARTIES

3. Plaintiff, Rodney W. Harrell, is and was at all material times, a resident of the Commonwealth of Virginia, residing at 981 Powhatan St., Alexandria VA 22314.

4. Defendant Freedom Mortgage Corporation (hereinafter "Freedom Mortgage", "Freedom" or "FMC") is the current owner and servicer of the refinanced loan secured by the real property located at 981 Powhatan St., Alexandria VA 22314. Freedom Mortgage has a principal place of business in Mt. Laurel, New Jersey, and is a corporation present in the Commonwealth of Virginia.

## FACTUAL ALLEGATIONS

5. Harrell owns the single-family, residential property at 981 Powhatan St., Alexandria VA 22314, and has solely owned said property since April 19, 2005.

6. NYCB Mortgage Company, LLC ("NYCB") was the original refinance mortgage lender and servicer of the loan secured by the aforementioned real property.

7. Harrell refinanced the property with a new mortgage from NYCB on September 5, 2012, with payments beginning on November 1, 2012, as evidenced by a note describing certain terms of the mortgage. A copy of the note is attached hereto as Exhibit A to the Complaint.

8. The note required monthly payments, and an accompanying security instrument stating additional terms of the mortgage loan required payment to an escrow account for the purpose of assuring payment of all Alexandria City property taxes and private hazard insurance premiums.

9. At all relevant times up to and including the present, Mr. Harrell made payments through automatic withdrawal, never missing a payment and never making a late payment.

10. The City of Alexandria requires a two-installment payment of annual property taxes to be made as follows: the first installment payment must be paid by June 15th and the second installment must be paid by November 15th.

11. NYCB made the first installment payment for 2017 on June 1, 2017.

12. Upon information and belief, NYCB transferred the mortgage with certain rights and obligations, including the servicing of the loan, to Freedom Mortgage on October 31, 2017.

13. NYCB failed to make the second installment payment of the 2017 Alexandria City property tax.

14. Freedom Mortgage failed to make the second installment payment of the 2017 Alexandria City property tax in the 2017 calendar year. The 2017 Form 1098 from Freedom Mortgage shows that Freedom Mortgage made no disbursements at all from the escrow account in 2017.

15. At all relevant times, the escrow account held more than enough funds to pay the second installment of the 2017 property tax, a bill of $4,102.14.

16. The City of Alexandria assessed Harrell penalties for late payment, and because the property tax was not paid in the 2017 calendar year, Harrell incurred significant additional federal and state income tax liability for the 2017 tax year. *See* Internal Revenue Service, 2017 Instructions for Schedule A (Form 1040) A-7 (2017) ("If your mortgage payments include your real estate taxes, you can deduct only the amount the mortgage company actually paid to the taxing authority in 2017."). Virginia conforms to the federal tax code for itemized deductions in 2017. *See* Va. Dep't of Taxation, 2017 Form 760: Resident Individual Income Tax Booklet 11 (2017).

17. Harrell's total federal income tax for 2017, which has been paid in full, was $42,174.00, when it should have been $41,515.00.

18. Harrell's total Virginia income tax for 2017, which has been paid in full, was $10,799.00, when it should have been $10,563.00.

19. Harrell's total increased tax liability due to Freedom's failure to make a timely property tax payment was $895.00.

20. Although Freedom eventually paid the 2017 property tax in 2018, changes to the 2018 tax code bar the itemized deduction of state income and property taxes exceeding $10,000. *See* Tax Cuts and Jobs Act, Pub. L. No. 115-97, sec. 11042(a), § 164(b)(6)(B), 131 Stat. 2054, 2086 (2017) (to be codified at 26 U.S.C. § 164(b)(6)(B)). As in 2017, Harrell will itemize deductions in 2018 and will greatly exceed the $10,000 ceiling for state income and property taxes.

21. On January 31, 2018, at 3:32PM Eastern Time, Harrell telephoned Freedom's customer service office and spoke with a representative who identified herself as Beatrice, Employee #13263. In that call, the representative informed Harrell that Freedom had received a notice Harrell had faxed two days earlier showing the unpaid property tax and that Freedom understood the need to immediately pay the tax to avoid further penalties from the City. The representative also stated that fault for the missed payment rested with either NYCB or Freedom and she further assured Harrell that any late payment penalty from the City would be paid by Freedom.

22. On February 7, 2018, Harrell contacted the office at the City of Alexandria that handles City property taxes. A representative of that office informed Harrell that she personally knew of at least four other Alexandria homeowners with Freedom Mortgage Company mortgages who also had unpaid 2017 property tax bills.

23. On February 15, 2018, at 4:44PM Eastern Time, Harrell again telephoned Freedom's customer service office and this time spoke with a representative who identified herself as Bridget, Employee #3249. That representative informed Harrell that Freedom had

made a payment on his behalf to City on February 13th, but she was unable to confirm that Freedom had also paid the penalties. She further stated that it often takes up to two months after Freedom assumes a mortgage transfer for Freedom to start making payments out of the transferred escrow accounts, and that at that point Freedom personnel had become "overwhelmed" by the onslaught of required payments.

24. On February 16, 2018, Harrell sent a letter to Freedom requesting certain information about his mortgage. A copy of that letter is attached hereto as Exhibit B to the Complaint.

25. On February 16, 2018, Harrell sent a letter to NYCB requesting certain information about his mortgage. A copy of that letter is attached hereto as Exhibit C to the Complaint.

26. In June 2017, Freedom issued a press release announcing its acquisition of residential mortgage assets from NYCB. The release stated that the purchase brought Freedom approximately $500 million of residential mortgage assets from NYCB and the "deal includes the right to service over $20 billion of residential mortgage loans." A copy of that press release, printed from Freedom's website on February 20, 2018, is attached hereto as Exhibit D to the Complaint.

27. In June 2017, Freedom issued a press release touting that it "originated 42.7 billion of [Veterans Administration] loans in the first quarter" of 2017. A copy of that press release, printed from Freedom's website on February 20, 2018, is attached hereto as Exhibit E to the Complaint.

28. Freedom has thus engaged in a pattern and practice of failing to make required payments from escrow accounts and has accumulated a significant portfolio of failed payments.

29. On information and belief, supported by well over fifty (50) complaints filed with the Consumer Financial Protection Bureau ("CFPB") that are available on its website,

Freedom has failed to make timely payments of property taxes or insurance premiums from escrow accounts on over fifty (50) occasions since the beginning of 2016.

30. These CFPB complaints include at least one, complaint ID # 2782867, where Freedom's late property tax payment caused a Connecticut homeowner $840.00 in increased federal income tax liability for the 2017 tax year.

31. On information and belief, supported by a review on "mythreecents.com" by a party identified as "Sedona PhD" on January 20, 2018, Freedom failed to timely pay a Dallas homeowner's flood insurance on a loan transferred from NYCB, erroneously refunding money from that party's escrow account that should have gone to making the payment.

32. On information an belief, supported by numerous "Yelp" reviews, Freedom

   a. failed to pay property taxes, per "Dale B., Arvada, CO," 1/4/2016,

   b. failed to pay property taxes, per "Jeff T., Grand Rapids, MI," 2/25/2016,

   c. failed to pay property taxes, per "Earlice J., Las Vegas, NV," 7/9/2016,

   d. failed to pay both homeowner's insurance and property taxes, per "Kristi S., Sparks, NV," 3/8/2016,

   e. failed to pay homeowner's insurance, per "E.O., Charlotte, NC," 10/9/2015,

   f. failed to pay property taxes, per "Dana C., Carlsbad, CA," 1/22/2016, and

   g. failed to pay property taxes on a transferred mortgage, per "Sandia H., Lathrop, CA," 3/30/2016.

## COUNT I
## VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT OF 1974, 12 U.S.C. § 2601 et seq.

33. Harrell realleges and incorporates all the preceding allegations as if fully restated in this Count.

34. Section 6 of the Real Estate Settlement Procedures Act of 1974 ("RESPA"), as amended by the Cranston-Gonzalez National Affordable Housing Act, demands that

the servicer of a federally related mortgage loan who administers an escrow account make timely payments of property taxes from said account as said taxes come due. 12 U.S.C. § 2605(g).

35. Harrell's loan is a federally related mortgage loan within the meaning of 12 U.S.C. § 2602(1)(A).

36. Freedom Mortgage was the servicer of the loan during the relevant period, as it was responsible both for receiving payments designated for subsequent tax payments and for actually making those tax payments.

37. Freedom violated RESPA, 12 U.S.C. § 2605(g), by failing to make timely property tax payments out of escrowed funds.

38. Freedom has shown a pattern and practice of failing to make payments out of escrow accounts for the timely payment of taxes and insurance premiums as those payments have become due.

39. RESPA makes violators of section 2605(g) liable to borrowers for any actual damages, as well as additional statutory damages if a pattern of noncompliance emerges. 12 U.S.C. § 2605(f). Costs and attorneys' fees are also provided for by the statute. *Id.*

40. Harrell has suffered specific monetary damages in increased state and federal income tax liability.

41. Harrell has suffered additional actual damages in the amount of time it took him to communicate with the City of Alexandria, NYCB, and Freedom in efforts to determine why his taxes were not paid and to demand Freedom pay the taxes and penalties before the City began a credit-damaging collections action. Further, Harrell has lost confidence in Freedom's ability to make future timely payments, which has impaired the present value of the escrow agreement.

42. Defendant's failures to comply with RESPA have thus caused Harrell concrete and particularized harm.

**COUNT II**

**BREACH OF CONTRACT**

43. Mr. Harrell realleges and incorporates all the preceding allegations as if fully restated in this Count.

44. Under Virginia law, the security instrument's agreement to maintain an escrow account and to remit Harrell's owed property taxes to the City of Alexandria constituted a contract between Mr. Harrell and NYCB.

45. NYCB received, as valuable consideration, interest on the mortgage funds loaned and assurance that the property taxes and hazard insurance would be paid through the escrow account, reducing concerns about tax liens and insurance policy lapse.

46. Mr. Harrell received, as valuable consideration, funds to refinance the property at 981 Powhatan St., Alexandria VA 22314, and he also received the assurance that NYCB would ensure that taxes and insurance premiums would be paid in a timely manner.

47. Freedom Mortgage assumed from NYCB certain rights and obligations attached to the mortgage loan, including the servicing of the mortgage loan, when it purchased the loan from NYCB. Thus, Freedom had an obligation as transferee of the contract, and as servicer, to pay the property taxes in a timely manner out of the escrow account.

48. Freedom breached its contractual obligation, causing foreseeable harm to Harrell in the form of penalties and increased income tax liability.

49. Freedom knew or should have known, due to widespread publicity regarding the tax law changes, that persons with mortgages in states with state income taxes would be highly likely to suffer irreversible harm should they fail to make timely property tax payments in 2017.

**COUNT III**
**NEGLIGENCE**

50. Plaintiff realleges and incorporates all the foregoing allegations as if fully set forth under this Count.

51. Under Virginia law, for a Plaintiff to establish actionable negligence, he must show the existence of a legal duty on Defendant's part, Defendant breached that duty, and that such breach proximately caused damages to Plaintiff.

52. Freedom had a legal duty by contract, statute and practice, to remit property taxes to the City of Alexandria from Harrell's pre-paid escrow account.

53. Freedom breached that duty when it failed to submit the second installment of property taxes to the City on Harrell's behalf.

54. It is that failure, and only that failure, that proximately caused Harrell to incur penalties to the City and increased federal income tax liability.

## CLASS ACTION ALLEGATIONS

55. Plaintiff realleges and incorporates all the foregoing allegations as if fully set forth again in this section of the Complaint.

56. Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action for himself and on behalf of a class (the "Class"), defined as:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United Sates) who (a) had a residential mortgage loan from any lender on real property within the United States or its territories or other political subdivisions; (b) had escrow agreements requiring Freedom to remit either property taxes or hazard insurance premiums or both to the applicable local jurisdictions or insurance carriers from the property owner's escrow account; and (c) have not had their local property

taxes paid or hazard insurance premiums paid or both pursuant to the referenced escrow agreements in a timely manner.

57. Pursuant to Fed. R. Civ. P. 23, Plaintiff also brings this action for himself and on behalf of a subclass (the "Subclass"), defined as:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United Sates) who (a) had a residential mortgage loan from any lender on real property within the United States or its territories or other political subdivisions; (b) had escrow agreements requiring Freedom to remit property taxes to the applicable local jurisdictions from the property owner's escrow account; and (c) lost their 2017 local property tax deduction on their federal and/or state tax returns due to Freedom's failure to pay his/her/their local property taxes in 2017.

58. Specifically excluded from this Class and Subclass are
   a. All persons who elect to exclude themselves from this Class;
   b. All persons who have previously executed and delivered to Defendant a release of any claims that would otherwise be covered by the circumstances set forth in the definition of this Class above; and
   c. Defendant's officers, directors, agents, representatives, and their immediate family members.

59. **Numerosity:** The Class is so numerous that joinder of all members is impracticable.
   a. At this time, Plaintiff does not know the exact size of the Class.

b. Based on Freedom's own press releases attached to the Complaint as Exhibits D and E, it must have purchased at least hundreds of mortgages from NYCB.

c. Based on the conversations and other information described earlier in the Complaint, Plaintiff believes that Freedom failed to make timely property tax payments for a significant number, if not all, of the mortgages that Freedom purchased from NYCB in 2017.

d. Further, Freedom's failure to properly process property tax payments or insurance premiums or both has affected mortgages that were not purchased from NYCB, and the number of affected property owners over the last three years will likely reach into the thousands given the aggregate value of VA loans that Exhibit E states are held by Freedom.

60. **Commonality**: Common questions of law and fact exist as to all members of the Class.

a. The primary focus of the litigation will be on whether Freedom breached its statutory, contractual, and common law duty to remit Class members' property taxes or insurance premiums or both to the applicable local jurisdictions or insurance carriers in a timely manner.

b. A finding that either or both Defendants failed in any of those duties to any of the Class members will likely be applicable to all or almost all Class members.

61. **Typicality:** Plaintiff's claims are typical of the other members of the Class.

a. As discussed above as to the numerosity requirement, statements made by a representative of the City of Alexandria and by representatives of Freedom indicate that Freedom's failures in dealing with the NYCB transferred loans were systemic.

b. Including Freedom's numerous other nationwide failures to make timely payments from required escrow accounts, as indicated by the substantial

number of abovementioned complaints over the last three years, Freedom has shown a pattern of RESPA noncompliance with respect to all members of the Class.

c. All members of the Class suffered the same as Plaintiff Harrell in that their property taxes or insurance premiums or both were not timely and properly paid in accord with their escrow agreements, thus incurring late fees or insurance coverage lapses or both, and regardless of whether Freedom or NYCB ultimately paid to reimburse any Class members for any fees or other actual damages, all members of the Class are entitled to statutory damages as per RESPA.

d. Damages suffered by each member of the Subclass may vary in that the tax consequences to each individual property owner will be different based on the individual's taxable income, filing status, other deductions, etc. Plaintiff alleges that these variations in this one aspect of damages can be resolved in the damages phase of litigation. Plaintiff further alleges that the issues on which Plaintiff's claims and damages are typical of other members of the Class predominate over any issues for which Plaintiff may have claims to damages that are not as typical of a great number of Class members.

62. **Adequacy:** Plaintiff will fairly and adequately protect the interests of the Class.

a. Plaintiff's interests coincide with, and are not antagonistic to, other Class members' interests.

b. Plaintiff has retained counsel experienced in complex, commercial, and large class action litigation.

63. This matter may be maintained as a class action pursuant to Fed. R. Civ. P. 23(b)(3) in that questions of law and fact common to class members predominate over any

questions affecting only individual members and that a class action is superior to other available methods for fairly and effectively adjudicating the controversy.

WHEREFORE, Plaintiff Rodney W. Harrell requests the following:

1. That this Court certify the proposed Class.

2. That this Court designate Plaintiff Harrell as Class representative.

3. That this Court designate undersigned counsel as Class counsel.

4. That this Court grant actual damages;

5. That this Court grant statutory damages under 12 U.S.C. § 2605(f); and

6. That this Court order other further reasonable relief including costs and attorneys' fees.

JURY TRIAL DEMANDED

Respectfully submitted,

_____/s/_____
John J. Beins
VA Bar #35435
BEINS GOLDBERG LLP
2 Wisconsin Circle
Suite 700
Chevy Chase, MD 20815
240.235.5040
jbeins@beinsgoldberg.com

_____/s/_____
Justin P. Keating
VA Bar #75880

BEINS, AXELROD, P.C.
1030 15th St., NW
Suite 700 East
Washington, DC 20005
202.328.7222

jkeating@beinsaxelrod.com